IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS GANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12 C 7422 |
| v. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | Judge Jorge L. Alonso |
| S.A. GODINEZ, in his official capacity | ) | |
| as the Director of the Illinois Department | ) | |
| of Corrections, MARCUS HARDY, in his | ) | |
| official capacity as Warden of Stateville | ) | |
| Correctional Center, EDMUND | ) | |
| BUTKIEWICZ, in his official capacity as | ) | |
| Counselor at Stateville Correctional | ) | |
| Center, IMHOTEP CARTER, M.D., | ) | |
| SALEH OBAISI, M.D., ANTON | ) | |
| DUBRICK, M.D., LATOYA | ) | |
| WILLIAMS, and FNU GARCIA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants for their alleged violation of his Eighth Amendment rights. Defendants Wexford Health Sources, Inc., Imhotep Carter, Saleh Obaisi, Anton Dubrick, Latoya Williams, and Cynthia Garcia, sued as FNU Garcia, (collectively, "the Wexford defendants") have filed a Federal Rule of Civil Procedure 56 motion for summary judgment.[1] For the reasons set forth below, the Court grants the motion.

---

[1] Plaintiff has reached a settlement in principle with defendants Hardy, Godinez and Butkiewicz. (*See* 12/11/14 Minute Order.)

**Facts**

On January 8, 2012, defendant Dubrick examined plaintiff, who was an inmate at the Illinois Department of Corrections' ("IDOC's") Stateville facility and had been losing his hair for several months. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 1, 35.) Dubrick thought the hair loss was likely due to alopecia, "a benign hair condition that largely runs its course with frequent hair regrowth that is incomplete." (Defs.' LR 56.1(a) Stmt., Ex. D, Medical Records at AG000016.) Because, however, the hair loss might be due to an infection, Dubrick prescribed an anti-fungal medication, an antibiotic, and medicated shampoo for plaintiff. (*Id.*; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36.) Plaintiff received the two medications, but says he never received the shampoo. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36.)

On January 16, 2012, plaintiff filed a grievance seeking "proper medical treatment for a[] fungal infection." (*See* Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. 2, 1/16/12 Grievance.) The grievance states: "On Jan 12, 2012 I had sick call[.] I seen the nurse and she told me it was a fungal infection and I have to wait to see the doctor all the way to the 23 of Jan." (*Id.*) The January 30, 2012 response said that plaintiff was scheduled to see medical staff on February 2, 2012. (*Id.*)

On January 28, 2012, plaintiff was examined by another doctor, who ordered blood tests for a "complete metabolic profile." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 39; Defs.' LR 56.1(a) Stmt., Ex. D, Medical Records at AG000120.) The blood was drawn on February 1, 2012, and the results were normal. (Defs.' LR 56.1(a) Stmt., Ex. B, Carter Dep. at 73; *id.*, Ex. D, Medical Records at AG000128.)

On February 3, and 9, 2012, plaintiff filed two more grievances "to have [his] medical condition treated properly by a specialist." (Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 2, 2/3/12 & 2/9/12 Grievances.) The February 14, 2012 response states: "Mr. Gant, you were seen on 1-28-12. Again

on 2-8-12. You have been call [sic] in for blood work and given meds. You have a follow up appt within the next week or so." (*Id.*)

On February 28, 2012, Dubrick examined plaintiff again and ordered more blood tests to check for an autoimmune- or hormone-related cause for his hair loss. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 41.)

After seeing Dubrick on February 28, 2012, plaintiff submitted another grievance seeking treatment from a specialist. (*Id.*, Ex. 2, 2/28/12 Grievance.) The grievance states:

> Today I went for a follow up with Dr. Dubrick . . . . for my on going hair problem about my hair falling out for no reason. Today he told me he didn't know why my hair is falling out and he will not refer me to see a specialist because I'm not diagnosed with an [sic] disease, an [sic] it would cost to [sic] much money to send me out to the U.I.C. to see a specialist. But what he would do is give me some crotazone [sic] tabs. They have sufficient side effects that make you gain weight and make your face puffy and you have to get off it gradually after taking it for a while. But you will have to take it at your own risk.

(*Id.*)

The blood tests Dubrick ordered on February 28 were done on March 13, 2012, and the results were normal. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 43; Defs.' LR 56.1(a) Stmt., Ex. B, Carter Dep. at 73.)

On April 16, 2012, defendant Carter examined plaintiff. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 44.) Carter noted that "[b]asic endocrine blood tests were normal" and diagnosed plaintiff with "Alopecia: Complete." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 45; Defs.' LR 56.1(a) Stmt., Ex. D, Medical Records at AG000022.) Carter referred plaintiff to an endocrinologist at UIC "for a higher and more thorough evaluation of [plaintiff's] hair loss." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 47.) On April 23, 2012, Wexford approved the non-urgent referral. (*Id.*) The referral was non-urgent because plaintiff

3

"had been losing his hair for over a year and based on the laboratory test results and the history and physical examination there was no immediate risk to his life, or serious medical problem, and no acute challenge to his health and well-being." (*Id.* ¶ 48.)

On April 26, 2012, plaintiff saw defendant Williams, who referred him for mental health services because he was having difficulty coping with the hair loss. (*Id.* ¶ 49.) On May 8, 2012, plaintiff saw a psychologist. (*Id.*)

On July 16, 2012, plaintiff was seen at the UIC Endocrinology Department. (*Id.* ¶ 51.) The UIC doctor noted that there was "[n]o known endocrine reason for hair loss" and recommended that plaintiff be referred to a dermatologist. (Defs.' LR 56.1(a) Stmt., Ex. D, Medical Records at AG000048.)

On August 11, 2012, defendant Obaisi examined plaintiff, diagnosed him with alopecia and referred him for a dermatology consult. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53.) On August 22, 2012, Wexford ordered a punch biopsy, which would reveal whether fungus or bacteria had infiltrated plaintiff's skin, as an alternative to sending plaintiff to a dermatologist. (*Id.* ¶¶ 54-55.)

On October 19, 2012, defendants Obaisi and Williams performed the punch biopsy and sent the specimen to UIC for evaluation. (*Id.* ¶ 56.) On October 23, 2012, a UIC pathologist made a diagnosis of "Alopecia with features of androgenic alopecia" from the biopsy specimen. (*Id.* ¶ 57.)

On February 20, 2013, plaintiff filed a grievance seeking an appointment with Obaisi to get the results of the punch biopsy. (*Id.*, Ex. 2, 2/20/2013 Grievance.)

In March 2013, Obaisi saw plaintiff and noted no change in plaintiff's condition. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 58.) Obaisi also submitted a referral request for a dermatology consult to Dr. Haymes. (*Id.* ¶ 59.) On March 19, 2013, Haymes and Obaisi "determined that plaintiff had no

functional or physical problem in relation to the hair loss and the only issue was a cosmetic one; and as such, no dermatology consult was necessary." (*Id.* ¶ 60.)

On April 16, 2013, plaintiff saw Obaisi, who ordered a 60-day steroid trial for plaintiff, to see if it would lead to any hair growth. (*Id.* ¶ 61.) Plaintiff took the steroid from April 17, 2013 through May 15, 2013, but it did not provide plaintiff with any significant hair growth. (*Id.* ¶ 62; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5.)

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Exhaustion

The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing

a claim" under § 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). Defendants bear the burden of pleading and proving failure to exhaust. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

They have not shouldered that burden. Defendants did not assert failure to exhaust as an affirmative defense and they offer no evidence to support their assertion that plaintiff did not appeal the denial of his grievances. Accordingly, their motion for summary judgment on the grounds of exhaustion is denied.

**Merits**

The individual defendants violated plaintiff's Eighth Amendment rights only if they were deliberately indifferent to his objectively serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (per curiam) (quotations omitted). A defendant acted with deliberate indifference if "[he] was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Id.* Wexford can be held liable for the individual defendants' alleged actions only if "they represent Wexford's own policy." *Olive v. Wexford Corp.*, 494 F. App'x 671, 672 (7th Cir. 2012). "Defendants concede that alopecia is an objectively serious medical condition," but contend that they were not deliberately indifferent to it. (Mem. Law Supp. Defs.' Mot. Summ. J. at 3.)

Far from suggesting deliberate indifference, the undisputed facts show that defendants were responsive to plaintiff's medical needs. Plaintiff first complained about hair loss on January 16,

2012 to defendant Dubrick, who thought it likely that plaintiff had alopecia, but gave him antifungal medication and an antibiotic, to rule out an infection. Over the next six weeks, plaintiff had blood tests to determine if there was a metabolic, autoimmune, or hormonal cause for his hair loss, the results of which were normal. On April 16, 2012, defendant Carter diagnosed plaintiff with alopecia and referred him on a non-urgent basis to a UIC endocrinologist, a referral that Wexford approved. On April 26, 2012, defendant Williams referred plaintiff for mental health services to help him cope with his hair loss. In July and August 2012, respectively, a UIC endocrinologist and defendant Obaisi recommended that plaintiff see a dermatologist. On August 22, 2012, Wexford ordered a punch biopsy as an alternative to sending plaintiff to a dermatologist, and on October 23, 2012, a UIC pathologist made a diagnosis of alopecia from the biopsy specimen.

Despite this undisputed record of care, plaintiff contends that defendants were deliberately indifferent because they did not treat his persistent headaches or send him to a dermatologist, as the UIC endocrinologist recommended. The only support plaintiff offers for the former contention is the following notation from his medical records: "7/21/12 RN Note, 'I'm feeling OK today. I usually have h/a's.'" (*See* Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. 5, Offender Outpatient Progress Notes at Gant 37.) Even if "h/a's" means headaches, and nothing in the record establishes that it does, there is no evidence that suggests any of the individual defendants wrote, saw, or was aware of this alleged complaint. Absent evidence that defendants were subjectively aware of plaintiff's headaches, they cannot be held liable for being deliberately indifferent to them. *Wynn*, 251 F.3d at 593.

Plaintiff fares no better with the latter contention, that defendants' failure to send him to a dermatologist constituted deliberate indifference. The record shows that plaintiff was diagnosed by Dubrick, Carter, Obaisi, a UIC endocrinologist, and a UIC pathologist with alopecia, a benign

autoimmune disorder, which, in plaintiff's case, is incurable. (*See* Defs.' LR 56.1(a) Stmt., Ex. B, Carter Dep. at 74; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 68-69.) Plaintiff offers no evidence that suggests a dermatologist would have made a different diagnosis, prescribed different medication, or otherwise been able to improve plaintiff's condition. Absent such evidence, plaintiff has not created a triable fact issue as to whether defendants' failure to send him to a dermatologist amounted to deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (stating that "[a] prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care" and "[a] refusal to [do so] supports a claim of deliberate indifference only if that choice is blatantly inappropriate") (quotation omitted); *c.f. Keller v. Feinerman*, No. 3:06-CV-661, 2011 WL 1519384, at *3 (S.D. Ill. Apr. 20, 2001) (citing cases and stating that "[r]ecent Seventh Circuit decisions show that summary judgment is not appropriate when (1) a prisoner has an objectively serious medical condition that requires referral to a specialist, (2) the prison doctor refuses to make the referral, and (3) the prisoner is subjected to pain as a result.").

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to plaintiff's claims against the Wexford defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants the Wexford defendants' motion for summary judgment [118].

**SO ORDERED.**  **ENTERED:  July 8, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**